UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:09-cr-00539 |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Docs. 65 & 72] |
| v. | : | |
| BILLY COOPS, | : | |
| Defendant. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Eleven years ago, Defendant Billy Coops was sentenced to a 25-year prison term under a mandatory minimum sentence even though Coops, the Government, and the Court all agreed that a 15-year sentence was more appropriate. Since being sentenced and imprisoned, Coops's health has deteriorated and he now seeks relief under the compassionate release statute.

Finding that Coops's health decline presents extraordinary and compelling circumstances and that a sentence reduction is warranted under the 18 U.S.C. § 3553 factors, the Court reduces Coops's prison term to 15 years.

I. Background

In 2009, after receiving a confidential informant tip that Coops was selling drugs, police executed a buy-bust operation. The police gave the confidential informant cash to make a drug purchase from Coops. The confidential informant arranged the transaction. Then, when Coops entered the informant's car, the informant gave a signal and police

Case No. 1:09-cr-00539
GWIN, J.

arrested Coops, who had approximately two ounces of cocaine on his lap in two bags. Police also found a loaded gun in Coop's waistband.[1]

Coops was indicted for one count of felon in possession of a firearm, one count of possession with intent to distribute cocaine, and one count under 18 U.S.C. § 924(c) for using a firearm in relation to the commission of a drug trafficking crime.[2]

Coops initially entered into a plea agreement with the Government that included a joint recommendation for a 15-year sentence.[3] The agreement said that even though Coops was subject to a 25-year "mandatory minimum sentence" for the § 924(c) charge because of an earlier 1992 conviction for possessing a firearm during a drug transaction, the Government "agree[d] not to seek the statutory enhancement for the prior conviction."[4]

But upon review of the plea agreement, the Court decided that it did not have the authority to accept the parties' recommended sentence since the § 924(c) conviction had an associated mandatory minimum.[5]

The parties then submitted more briefing. Defendant argued that the Court did have the authority to accept the 15-year sentence.[6] The Government responded by "urg[ing] the court to [ . . . ] accept the agreement" and said that "[a] review of the Title 18 U.S.C. § 3553 factors should result in a determination that an agreed sentence of 15 years imprisonment is reasonable under the circumstances."[7]

---

[1] PSR at 5–6; *see also* Doc. 38 at 17–22 (same).
[2] Doc. 1.
[3] Doc. 17.
[4] Doc. 17 at 3–4.
[5] Doc. 39 at 1.
[6] Doc. 21.
[7] Doc. 26.

- 2 -

Case No. 1:09-cr-00539
GWIN, J.

The Court also agreed that "15 years would be an appropriate sentence."[8] However, the Court concluded that it would be required to impose the 25-year sentence for the § 924(c) charge.

Ultimately, Coops pled guilty to all three counts and the Court sentenced him to a 25-year prison term.[9] He then unsuccessfully challenged his sentence on direct appeal[10] and collateral review.[11]

Coops later filed a pro se motion for compassionate release,[12] which the Federal Public Defender supplemented.[13] He asks the Court to reduce his sentence to time served and to be placed on supervised release.[14] In the alternative, he seeks a sentence reduction.[15]

The Government opposes.[16]

## II.    Discussion

Coops seeks relief under 18 U.S.C. § 3582(c)(1)(A). Since his claim is properly exhausted,[17] the Court first determines whether "extraordinary and compelling reasons" justify reducing Coops's sentence.[18] After that, the Court considers the § 3553 sentencing factors "to the extent that they are applicable."[19]

---

[8] Doc. 40 at 5.
[9] Doc. 46.
[10] Doc. 42.
[11] Doc. 56.
[12] Doc. 65.
[13] Doc. 72 (Sealed).
[14] *Id.* at 1.
[15] *Id.*
[16] Doc. 76 (Sealed).
[17] *Id.* at 3 n.2 (Government recognizing Coops's motion as properly exhausted).
[18] *United States v. Bass*, No. 21-1094, 2021 WL 5099583, at *3 (6th Cir. Nov. 3, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A).
[19] *Id.; see also id.* n.2 (18 U.S.C. § 3582(c)(1)(A)(ii) policy statement requirement "does not apply" to inmate-filed motions).

Case No. 1:09-cr-00539
GWIN, J.

### A. Extraordinary and Compelling Reasons

The Sixth Circuit has said that "district courts have discretion to define 'extraordinary and compelling' on their own initiative."[20] But that discretion is not limitless. The Sixth Circuit has established that "facts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction."[21] Additionally, "the combination of grounds for release, none of which independently supports a sentence reduction, does not collectively 'entitle a defendant to a sentence reduction.'"[22]

Exercising its discretion, the Court finds that the deterioration of Coops's health over his 11-year incarceration is an extraordinary and compelling reason for a sentence reduction. Coops, now 52 years old, has been diagnosed with numerous serious health conditions.

First, while in prison, Coops was diagnosed with a cyst on his kidney.[23] While doctors have said that cyst is "likely" benign, the only treatment Coops has received is periodic monitoring.[24] But the cyst is so painful that Coops is "unable to walk for more than a couple of minutes at a time."[25]

Second, Coops has been diagnosed with a heart aneurysm.[26] The larger an aneurysm is, the more likely it is to rupture, which can be fatal. Coops's health records

---

[20] *United States v. Elias*, 984 F.3d 516, 519-20 (6th Cir. 2021); *see also United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.").
[21] *United States v. Lemons*, 15 F.4th 747, 750 (6th Cir. 2021) (quoting *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021)).
[22] *Lemons*, 15 F.4th at 749 (quoting *United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021)).
[23] Doc. 72 at 4 (citing Doc. 72-2 at 3).
[24] Doc. 72-2 at 31.
[25] Doc. 72 at 4.
[26] *Id.* at 4–5.

- 4 -

Case No. 1:09-cr-00539
GWIN, J.

show that in 2014 doctors found that his aneurysm measured 4 centimeters but there's no indication that it has been measured since.[27]

Third, Coops also suffers from type 2 diabetes, high cholesterol, and high blood pressure, among other ailments.[28] These conditions are serious, and while insufficient on their own to constitute extraordinary and compelling reasons, the Court finds that they also contribute to its conclusions regarding Coops's health.

Additionally, while the Sixth Circuit has said that, in most circumstances, people like Coops who have received a COVID-19 vaccine cannot invoke the risk of contracting COIVD-19 as grounds for extraordinary and compelling circumstances,[29] the Court finds that the pandemic has made Coops's "incarceration harsher and more punitive than would otherwise be the case" and "exceeds what the Court anticipated at the time of sentencing."[30]

For example, the Government attacks Coops's claim that his health conditions have worsened because of his incarceration by saying that he declined a March 2021 hospital visit.[31] But Coops's response only underscores the way in which the pandemic made his prison term harsher than anticipated. Coops says he declined the March 2021 visit because his two earlier hospital visits during the pandemic required, for quarantine purposes, four weeks in solitary confinement for each visit.[32] And because the federal prison where he was located had a water main break during some of that time, solitary

---

[27] Doc. 72 at 5 (citing Doc. 72-2 at 42).
[28] Coops also has been diagnosed with: hypertension; obesity; enthesopathy of ankle and tarsus (inflamed ligaments and tendons around the ankle area); an enlarged prostate; and a fungal infection of the nail. Doc. 72 at 3–4.
[29] See *Lemons*, 15 F.4th at 751.
[30] *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) (Rakoff, J.) (citations omitted).
[31] Doc. 76 at 23.
[32] Doc. 79 at 2.

- 5 -

Case No. 1:09-cr-00539
GWIN, J.

confinement inmates only had access to cloudy brown water.[33] This made managing his diabetes and other health conditions even more difficult than usual.[34] Accordingly, the Court does not find the declined visit disqualifying.

In summarizing his health conditions, Coops says that: "I fear for my life."[35] Coops's health conditions provide an extraordinary and compelling circumstance supporting a sentence modification.

### B. Section 3553 Factors

The Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" the need for the sentence "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant," and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."[36]

The Court finds it remarkable that the Government previously said that the § 3553 factors suggested that a 15-year sentence was appropriate, but now says that the same inquiry points to a 25-year sentence. The Court disagrees with the Government's present position and finds that the factors support a 15-year sentence.

Evaluating Coops's sentence in light of the § 3553 factors shows many of the well-documented problems with mandatory minimums.[37] At the core of the modern American

---

[33] Doc. 79 at 2.
[34] *Id.*
[35] Doc. 65.
[36] 18 U.S.C. § 3553(a).
[37] *See* Charles Colson Task Force on Fed. Corr., Transforming Prisons, Restoring Lives 12 (2016) ("[T]he mandatory minimum framework [ . . . ] is fundamentally broken.").

- 6 -

Case No. 1:09-cr-00539
GWIN, J.

sentencing regime—and the § 3553(a)(2)(A) factor requiring "just punishment"—is the retributive idea that criminal sentences should be particular to the individual and the offense.[38] But mandatory minimums, as in this case, prevent judges from conducting that inquiry. Instead, relatively less culpable defendants are often treated "on par with the worst offenders Congress had in mind when passing its laws."[39]

While the Court appreciates the seriousness of Coops's offense, it also notes that Coops did not actually complete a drug transaction since police executed the sting operation and the gun was only recovered from his waistband after he was arrested. There was no identifiable victim. Nonetheless, as the Court noted at sentencing, Coops received a severe prison term, one that exceeded typical sentences for more culpable conduct.[40] Indeed, in the Court's view, the 25-year term undermines the rule of law as it is disproportionate to the offense, making the public question the fairness of the criminal justice system.[41]

Additionally, the Court finds that Coops's danger to the public and danger of recidivism diminishes as he has aged. The Court also concludes that 25 years' incarceration provides little more deterrence than 15 years' incarceration.[42] When Coops

---

[38] *See* James S. Gwin, *Juror Sentiment on Just Punishment: Do the Federal Sentencing Guidelines Reflect Community Values?*, 4 Harv. L. & Pol'y Rev. 173, 180–82 (2010).

[39] Rachel E. Barkow, *Categorical Mistakes: The Flawed Framework of the Career Criminal Act and Mandatory Minimum Sentencing*, 133 Harv. L. Rev. 200, 201 (2019).

[40] Doc. 40 at 22–23 (noting Ohio punishment for premeditated murder allows for parole after 20 years imprisonment).

[41] *See Undoing the Damage of the War on Drugs: A Renewed Call for Sentencing Reform, Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 117th Cong. 2 (2021) (testimony of Professor Rachel E. Barkow), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf ("Long sentences themselves can be harmful to public safety because they undermine public confidence in criminal laws. People see disproportionate sentences and lose faith that government is operating fairly and equitably.").

[42] *See* U.S. Sent'g Comm'n, The Effects of Aging on Recidivism Among Federal Offenders 3 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf ("Older offenders were substantially less likely than younger offenders to recidivate following release.").

Case No. 1:09-cr-00539
GWIN, J.

is released from prison, he will be in his mid-50s. At that age and with his health conditions—that make walking for just a few minutes difficult—the Court finds that he presents reduced risk to the public.

And the Court also observes that Coops has completed prison rehabilitative opportunities. He says that he has "successfully completed a janitorial program, numerous Adult Continuing Education classes, and [ . . . ] a work program for labor overseen by an outside contractor."[43] He also says that his prison term has made him understand "new grounds of Respect for the Law, as well as learning the total cost of [his] actions" and that he "still take[s] full responsibility for and the seriousness of [his] past life."[44]

The Government draws attention to the fact that Coops has had some disciplinary infractions while in prison.[45] But as Coops says in response, he was infraction-free for five years before his first infraction and has now been infraction-free for almost three years.[46] Accordingly, the Court finds the Government's contention that Coops's prison sentence has not "convinced Coops of the importance of changing his ways" to be overstated.[47]

Still, the Court rejects Coops's request for a sentence shorter than 15 years. His crimes are serious, especially the repeat nature of the offense.

III.     Conclusion

Accordingly, the Court GRANTS in part and DENIES in part Coops's motion for compassionate release. His sentence is reduced to 15 years. All other conditions remain the same.

---

[43] Doc. 76 at 7–8.
[44] Doc. 65-1.
[45] Doc. 76 at 26.
[46] Doc. 79 at 4.
[47] Doc. 76 at 26.

Case No. 1:09-cr-00539
GWIN, J.

    IT IS SO ORDERED.

Dated: November 8, 2021                             *s/    James S. Gwin*
                                                                             JAMES S. GWIN
                                                                             UNITED STATES DISTRICT JUDGE